ORIGINAL

Ilangovan Kuppusamy
Ranjani Ilangovan Krishnan
5371 Strasbourg Ave
Irvine, CA 93604
(310) 897-7555

Debtors



FILED
JAN 29 2015
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In Re: Ilangovan Kuppusamy, and Ranjani Ilangovan Krishnan,<br><br>Debtors, | Case No. : 8:14-bk-17399-CB<br><br>Chapter 7<br><br>Filed: December 26, 2014 |
| Richard A. Marshack, Chapter 7 Trustee,<br><br>       Plaintiff,<br>v.<br><br>Harikrishnan Kuppusamy Krishnan,<br><br>       Defendant | **MOTION TO DISMISS CHAPTER 7 TRUSTEE'S COMPLAINT and MOTION TO DISCHARGE MR. MARSHACK AS CHAPTER 7 TRUSTEE** |

   COME NOW, Debtors, and hereby move the Court to relieve Chapter 7 Trustee from trusteeship duties for lack of disinterestedness and for conflicts of interest, and further pray the Court to dismiss the Chapter 7 Trustee's complaint for the following reasons.

1. The petition was filed on December 26, 2014 by mistake without full understanding.

2. The petition was filed when Ms. Krishnan was in India. She did not review any schedules, nor did she approve the filing of the petition in her name or jointly with her husband. She left the United States on December 21, 2014 after William A. Kent, attorney, obtained her signatures in blank forms without any knowledge of the contents. See Krishnan Aff., at pp. 1-2, ¶¶ 2&3.

3. After returning from India on January 10, 2015, on January 11, 2015 she asked Mr Kent to dismiss the case. Id., at p. 3. Mr Kent refused to file dismissal.

4. In the effort she consulted with attorney Richard Heston.

5. Mr. Heston, apparently believing that the Chapter 7 Trustee would agree to dismiss the case, contacted the Chapter 7 Trustee via "back channel."

6. Mr. Marshack did not inform Mr. Heston that Mr. Marshack would not discuss any matters via "back channel."

7. Mr. Marshack appears to have given an impression to Mr. Heston that he would discuss dismissal via "back channel" and thereby obtained secret information from Mr. Heston.

8. The Chapter 7 Trustee, Mr. Marshack, without authority to do so, contacted William A. Kent and obtained privileged

- 2 -

information about Debtors from Mr. Kent without waiver of any privilege by the Debtors.

9. Mr. Marshack, obtained secret information from Mr. Heston by misstating that he would consider consenting to dismissal if he was given information that was obviously privileged, at a time Mr. Heston was still being interviewed by the Debtors whether to hire Mr. Heston to represent them. Debtors never hired Mr. Heston.

10. Mr. Heston informed Mr. Marshack that William A. Kent filed an improper petition and that the Debtors, being immigrants, were inarticulate as to matters of law and were wronged.

11. Chapter 7 Trustee then appears to have decided to take the home as "fraudulent transfer" and use the proceeds therefrom for legal fees for his own firm's benefit.

12. Debtors are informed and or believe that one or more persons came to Debtors' home to take pictures and measurements of the home from the street soon after Mr. Heston initiated contact with Mr Marshack.

13. The Chapter 7 Trustee obtained secret information by giving false impression to Mr. Heston that he might consider consenting to dismissal of the case.

14. Mr. Marshack was informed that the Debtors did not authorize the filing of the Chapter 7 petition.

Main Document    Page 4 of 12

Nevertheless Mr. Marshack contended that debtors' signatures on forms were sufficient evidence of their approval to file the bankruptcy, though the debtors did not review any materials therein.

15. Mr. Marshack was informed many times by Debtors that the schedules were not prepared by the date Mr. Kent obtained their signatures on four pages of blank forms, and that they were not counseled of the differences between various chapters under the bankruptcy code.

16. Mr. Marshack invited Debtors to come to discuss their request for dismissal only to obtain secret and privileged information from them and their counsel.

17. Mr. Marshack also attempted to recover $5000 that Mr. Kent obtained as fee from the debtors and alleged that it was "his" money.

18. Mr. Marshack then decided to sue Mr. Kent for legal malpractice allegedly on behalf of the Debtors, but stated that he would be the person to recover about $100,000 or more (or the value of the equity in Debtors' home) from Mr. Kent for malpractice which Mr. Marshack announced that would belong to the bankruptcy estate.

19. Even as he obtained secret information from Mr. Heston, Mr. Marshack secretly intended to sell the Debtors' home and

use up the proceeds as his firm's fees in contesting the claims by the Colorado claimants and other claimants.

20. Mr. Marshack and his firm conducted extensive legal research and attempted to convince Debtors' counsel that it would be beneficial to the debtors if all claims were litigated in the bankruptcy court, despite knowledge that the claims by the Colorado claimants cannot be adjudicated this forum because of forum selection clauses and arbitration agreements.

21. In view of the various and lengthy arguments and debates of whether the Colorado claimants' claims were "core" or "non-core" or whether they would fall under *Stern v. Marshall* rule, or whether these claims are subject to arbitration etc, and whether there was merit to these claims, the averment in the Adversary Complaint by the Chapter 7 Trustee that the Petitioner did not state that the $19 million claim by the Colorado plaintiffs is "disputed" is thoroughly misleading.

22. The Colorado complaint did not seek $19 million, but alleged that they had invested about $9 million in Mexican iron ore mining operation which operation failed due to price collapse and governmental interference in Mexico.

23. Mr Marshack is also aware that some related claims could not be litigated in the US courts but were subject to binding arbitration in Mexico City under Mexican laws.

24. Debtors gave Mr. Marshack a copy of the Colorado complaint, which makes it clear that the claims therein either were grossly exaggerated or utterly lacked any merit.

25. For example, Mr. Marshack was made aware that the Hong Kong arbitration is likely dismissed for failure to prosecute, which arbitration was initiated against one of the Colorado claimants by a business called Fremery Holdings Ltd of Hong Kong, which dismissal would eliminate a substantial portion of the claims by the Colorado claimants.

26. In addition the Colorado claims involve certain allegations by three Belgian companies, which claims are subject to binding arbitration in Geneva, Switzerland under Swiss laws. The Belgian companies improperly added their claims and brought suit in Colorado, where no single event related to the Mexican mining operation took place.

27. Debtors informed Mr. Marshack via e-mail that these claims were subject to arbitration under Mexican, Swiss and English laws and could not be litigated in the USA.

28. After learning that the Colorado claims are subject to binding arbitration in various jurisdictions under different laws, and not subject to the jurisdiction of the US courts

under the Federal Arbitration Act, 9 U.S.C. § 2 *et seq*, let alone in the Bankruptcy court, and that the New York Convention was acceded to by the United States for binding maritime and extraterritorial disputes[1], 9 U.S.C. § 201 *et seq.*, the Chapter 7 Trustee requested the Debtors to waive their desire to arbitrate these disputes in Mexico, and to bring them to this Bankruptcy Court so that he would contest the claims and litigate the same in this Court. When it was pointed that this may not be a "core" matter under *Stern*, the Chapter 7 Trustee looked up case law and alleged, inaccurately, that the 9th Circuit Court of Appeals ruled against that view. These discussions with the Debtors' counsel make it clear that the Chapter 7 Trustee's current

---

[1] The 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the New York Convention) requires signatory states, including the United States, to recognize and enforce arbitration agreements entered into in fellow signatory states, and to recognize and enforce arbitral awards issued in such states. The New York Convention has been incorporated into Chapter 2 of the FAA. Mexico, Switzerland and Hong Kong are signatory states to the New York Convention. See Contracting States, NEW YORK ARBITRATION CONVENTION, http://www. newyorkconvention.org/new-york-convention-countries/contracting-states (visited 1/27/2015). The 1975 Inter-American Convention on International Commercial Arbitration (the Panama Convention) (30 January 1975, 14 I.L.M. 336) incorporated into Chapter 3 of the FAA also applies because Mexico and the United Sates are signatories to the Panama Convention. 9 U.S.C § 302. Under 9 U.S.C. § 305, Panama Convention governs if both the New York and Panama Conventions apply and if the majority of parties to the arbitration agreement are citizens of Panama Convention signatories.

- 7 -

allegations about the Colorado claim as being $19 million or that it was not "disputed" is inaccurate.

29. On the one hand the Chapter 7 Trustee stated that he would "contest" the Colorado Claimants' claims and to seek to nullify the same, and on the other hand sought to use the proceeds from the sale of Debtors' home to pay for his attorney's fees, thus truly impoverishing the Debtors wile enriching himself. In that effort he asked the Debtors to waive privilege as to Mr. Kent, and to "cooperate" with him in bringing all claims to this bankruptcy court.

30. The Chapter 7 Trustee did not disclose his self-interest in this regard: he appeared to allege fraudulent transfer on the part of the debtors with a view to use the proceeds of the sale of their home to pay his firm's legal fees in disputing these complex extraterritorial disputes, which would not have resulted in any liability on the part of Mrs. Krishnan[2].

---

[2] California being a community property state, if no liability attaches to Mrs. Krishnan from the Colorado case, their community property is not subject to "claw back" by the trustee. See *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.* (2007) 549 U.S. 443, 451 ("As we stated in *Butner*, property interests are created and defined by state law, and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (*quoting Butner v. United States* (1979) 440 U.S. 48, 55 (internal brackets and quotation marks omitted)). The Trustee's avoidance action

- 8 -

31. Based on misunderstanding of any claims against Mrs. Krishnan, the Chapter 7 Trustee jumped the gun to file this avoidance action alleging that this was a fraudulent transfer.

32. Even as to other claimants' claims against Dr. Kuppusamy, the Chapter 7 Trustee aggressively argued in favor of the claimants' claims, even as he also stated that he would object to the claims.

33. These contradictory positions appear to be aimed at creating disputes resulting in significant fees for the attorneys from the Trustee's firm.

34. Debtors informed the Colorado claimants that the Chapter 7 Trustee was perhaps planning to generate legal fees for his firm by requiring all claimants to bring their claims to the bankruptcy court so that he could object to the claims and generate fees for his firm.

35. When the Chapter 7 Trustee averred in Paragraph 14 that the debtors signed and approved the Chapter 7 petition and schedules therein, the Chapter 7 Trustee knew full well that the statement was utterly false because Debtors showed him that Mr Kent filed the papers by mistake or due to miscommunication.

---

therefore is contingent on the Trustee's establishing any liability on the part of Mrs. Krishnan, which the Trustee cannot.

36. The statements are utterly and knowingly false because the Chapter 7 Trustee was shown the air ticket and boarding pass for Ms. Krishnan's travel to India and the Chapter 7 Trustee was fully aware that she did not review any schedules because no schedules were prepared at the time she left for India on December 19, 2014.

37. The Chapter 7 Trustee also requested Debtors to waive their privilege with respect to their communications with Willam A. Kent, under the guise that he would consider consenting to dismissal of the Chapter 7 Case.

38. Mr. Heston, unaware of the true intentions of Mr. Marshack, revealed Debtor's secret information that he was not authorized to do so.

39. At the time the Chapter 7 Trustee conversed with Mr. Heston, Mr. Heston was not authorized to reveal any confidential information of the Debtors.

40. Given the misleading manner in which the Chapter 7 Trustee acted with Debtors' counsel, and given the lack of disinterested nature of his actions, the Chapter 7 Trustee should be relieved from his trusteeship duties in this case.

41. The Complaint should be dismissed because the schedules were not reviewed by Ms. Krishnan, and the petition was

filed without her final approval to file after review of the materials therein, and thus was wholly unauthorized filing.

42. The US Trustee is informed of the actions of Mr. William A. Kent and Mr. Marshack, and that Mr. Marshack was perhaps planning to enrich his firm by seizing the Debtors' home and in not consenting to the Debtors' motion to dismiss.

43. WHEREFORE, Debtors pray for an order relieving Mr Marshack as Chapter 7 Trustee from this case for conflicts of interest, lack of disinterestedness, for obtaining confidential information, and for seeking a waiver of attorney/client privilege from the Debtors.

44. Furthermore, each of the Debtors individually and both the debtors jointly pray for an order dismissing the Chapter 7 petition because it was filed without full authority or after careful review of the materials and schedules filed on his/her behalf.

Respectfully submitted,

DATED: January 29, 2015                 _____
                                         Ilangovan Kupusamy, Debtor


DATED: January 29, 2015                 _____
                                         Ranjani Ilangovan Krishnan, Debtor

- 11 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled (*specify*): _____
MOTION TO DISMISS CHAPTER 7 TRUSTEE'S COMPLAINT and MOTION TO DISCHARGE MR. MARSHACK
AS CHAPTER 7 TRUSTEE

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 01/29/2015 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
  Richard Marshack, Trustee, 870 Roosevelt, Irvine, CA 92620
  Martin Greenbaum, 840 Newport Center Dr., Suite 720, Newport Beach, CA 92660
  Peter B. Nagel, 999 Eighteenth Street, Suite 1745, Denver, Colorado 80202
  William Lobel, 840 Newport Center Drive, Suite 750, Newport Beach, CA 92660

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
 US Trustee, Bankruptcy court, 411 W 4th ST. Room 9041, Santa Ana, CA 92701 (hand delivery)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

01/29/2015  Ilangovan Kuppusamy _____  _____
*Date*          *Printed Name*                                                    *Signature*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**