1  Mike D. Neue (State Bar No. 179303)
   mneue@lntlaw.com
2  LOBEL, NEUE & TILL, LLP
   840 Newport Center Drive, Suite 750
3  Newport Beach, CA 92660
   Telephone:      (949) 999-2860
4  Facsimile:      (949) 999-2870

5

6  Attorneys for Creditors,
   Presley O. Reed and Patricia Stacey Reed

7

8

9

10                  **UNITED STATES BANKRUPTCY COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12                      **SANTA ANA DIVISION**

13

14  In re:                              Case No. 8:14-BK-17399-CB

15  ILANGOVAN KUPPUSAMY and
    RANJANI IGANGOVAN KRISHNAN,
16                                       **OPPOSITION OF PRESLEY O. REED AND**
           Debtors.                      **PATRICIA STACEY REED TO DEBTORS'**
17                                       **MOTION TO DISMISS BANKRUPTCY CASE;**
                                         **AND JOINDER TO CHAPTER 7 TRUSTEE'S**
18                                       **OPPOSITION TO DEBTORS' MOTION TO**
                                         **DISMISS BANKRUTPCY CASE;**
19                                       **DECLARATION OF PRESLEY O. REED IN**
                                         **SUPPORT THEREOF**
20

21                                       **Hearing Date and Time:**

22                                       Date:  February 10, 2015
                                         Time:  2:30 p.m.
23                                       Ctrm:  5D
                                                Ronald Reagan Federal Building
24                                                411 W. Fourth Street
                                                Santa Ana, CA 92701
25

26

27

28

**TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, RICHARD A. MARSHACK, THE CHAPTER 7 TRUSTEE, THE DEBTORS AND OTHER PARTIES-IN-INTEREST:**

Presley O. Reed and Patricia Stacey Reed (the "Reeds"), creditors and parties-in-interest in the above-captioned chapter 7 bankruptcy case, hereby submit this Opposition to the Motion to Dismiss Chapter 7 Bankruptcy Case ("Motion to Dismiss"), filed on January 27, 2015 [Docket No. 19], by Ilangovan Kuppusamy and Ranjani Ilangovan Krishnan (the "Debtors"). In addition, the Reeds join in the Opposition to the Motion to Dismiss filed by Richard A. Marshack, the chapter 7 trustee appointed in the Debtors' cases, on February 5, 2015 [Docket No. 38] (the "Trustee's Opposition").

As set forth herein and in the Trustee's Opposition, there is no legitimate basis for dismissal of the Debtors' bankruptcy case and such dismissal would be extremely prejudicial to creditors, including the Reeds who, along with other parties injured by the Debtors' pre-petition conduct, are the most significant creditors of the Debtors' estate.

In support of this Opposition, the Reeds respectfully represent as follows:

## STATEMENT OF FACTS

1.      On November 4, 2014, prior to the Debtors' commencement of the bankruptcy case, the Reeds, along with other plaintiffs, commenced an action against the Debtors and their business entity, IRK International S.A. de C.V., in the United States District Court of the District of Colorado, entitled Presley O. Reed, Patricia Stacey Reed, KMP Mining, LLC, KMP Mexico, LLC, KMP International, LLC, Trasteel Belgium Societe Anonyme, Belgiron SA, and Trasteel International S.A. v. Ilangovan Kuppusamy, Ranjani Ilangovan Krishnan and IRK International S.A. de C.V., Case No. 1:14-cv-02989 (the "Colorado Action"). By the Colorado Action, the Reeds and the other plaintiffs therein assert over $17.5 million in claims against the Debtors based on conversion, fraudulent misrepresentation/omission, contribution and breach of contract related to, among other things, the Debtors' misconduct in raising funds from the Reeds and others related to a failed Mexican iron ore enterprise. A true and correct copy of the complaint filed in the

Colorado Action is attached as Exhibit "1" to the Declaration of Presley O. Reed (the "<u>Reed Declaration</u>") annexed hereto.

2.      On December 26, 2104, the Debtors commenced this case by the filing of a chapter 7 petition with the Court, and Richard A. Marshack was appointed chapter 7 trustee in the Debtors' case (the "<u>Trustee</u>").

3.      In the Debtors' Schedules of Assets and Liabilities (Schedule F – Creditors Holding Unsecured Nonpriority Claims) (the "<u>Schedules</u>"), the Debtors include the claims of the Reeds (listed in the amount of $9,145,859), and the claims of co-plaintiff Trasteel Belgium Societe Anonyme (listed in the amount of $5,677,251.59).[1]  These claims are not marked as contingent, unliquidated or disputed.  True and correct copies of the relevant portions of the Schedules are attached as Exhibit "2" to the Reed Declaration.

4.      The Reeds are informed and believe that, shortly after the commencement of the Colorado Action, the Debtors transferred what appears, at this point, to be their only material disclosed asset – their residence – to their son, Harikrishnan Kuppusamy Krishnan, for no consideration.  The Reeds are further informed and believe that there exists significant equity in the residence that could be utilized to pay creditors' claims, and that the continuation of the Debtors' cases in bankruptcy would provide greater recovery for creditors than outside of bankruptcy.  <u>See</u> Declaration of Richard A. Marshack filed in support of Trustee's Opposition ("<u>Marshack Declaration</u>"), §§ 3, 4, 6, 7, 8 and 13.

5.      The Reeds are informed and believe that, on January 27, 2015, the Trustee filed a complaint to avoid and recover the Debtors' transfer of the residence to their son (Adversary Case No. 8:15-ap-01027-CB) [Docket No. 18] (the "<u>Avoidance Action</u>").  <u>See</u> Marshack Declaration, § 11.

---

[1] These amounts reflect some, but not all, of the damage claims asserted against the Debtors by the plaintiffs in the Colorado Action.  Nothing stated herein serves to limit or fix the amount of the claims asserted, or to be asserted, by the Reeds (or whether such claims are properly subject to discharge or not) and the Reeds reserve all rights to assert any and all appropriate claims and arguments in the Debtors' case.  The current deadline for filing non-dischargeability actions in the Debtors' case is April 6, 2015, and a bar date for filing claims in the case has recently been set for May 4, 2015.

6.      The Reeds, through counsel, attended the Debtors' section 341(a) meeting of creditors scheduled for February 3, 2015.  The Debtors failed to appear at the meeting.

### THE DEBTORS' MOTION TO DISMISS SHOULD BE DENIED

Although there is no statutory basis set forth in the Debtors' Motion to Dismiss, dismissal of a chapter 7 case is governed by Section 707 of the Bankruptcy Code, which provides, in relevant part, that a bankruptcy court may dismiss a chapter 7 case only "after notice and a hearing and only for cause." 11 U.S.C. § 707(a) (emphasis added).  The determination of "cause" under Section 707(a) (beyond the non-exhaustive enumerated grounds of unreasonable delay, failure to pay requisite fees and costs and failure to file schedules and statements, none of which are applicable in this case) depends on the totality of the circumstances.  See e.g., In re Kaur, 510 B.R. 281, 285 (Bankr. E.D. Cal. 2014).  See also Sherman v. SEC (In re Sherman), 491 F.3d 948, 970 (9th Cir. 2007); Hickman v. Hana (In re Hickman), 384 B.R. 832, 840 (9th Cir. BAP 2008).

A debtor's right to voluntarily dismiss a chapter 7 case under § 707(a) is not absolute.  Kaur, 510 B.R. at 285-86; Bartee v. Ainsworth (In re Bartee), 317 B.R. 362, 366 (9th Cir. BAP 2004).  Indeed, a debtor must establish cause to obtain dismissal.  Id.  On the issue of cause, the law in the Ninth Circuit is clear – a voluntary chapter 7 debtor is only entitled to dismissal of a bankruptcy case if such dismissal will cause no "legal prejudice" to interested parties.  Kaur, 510 B.R. at 286 (internal citations to Ninth Circuit precedent omitted).  "Legal prejudice means 'prejudice to some legal interest some legal claim, some legal argument,' . . . but the issue of prejudice 'may be evaluated using both legal and equitable considerations.'"  Id. (internal citations to Ninth Circuit precedent omitted).  A debtor, as the moving party, bears the burden of showing "that there would be no legal prejudice resulting from the dismissal." Id. at 286.

If creditors are prejudiced in any respect by dismissal of a voluntarily filed chapter 7 case, a request by a debtor for dismissal should be denied in the absence of demonstrable cause.  See In re Akbarian, 2013 WL 6710347, *3 (Bankr. D. Utah 2013), citing In re Watkins, 29 B.R. 907, 908 (Bankr. N.D. Ill. 1999).

1    In the Debtors' case, "cause" for dismissal has not been established.  To the contrary, a

2  dismissal would be extremely prejudicial to creditors and the Debtors' estate, for among others,

3  the following reasons:

4        1.   Dismissal of the Bankruptcy Case Would Negatively Impact the Trustee's Ability to

5             Pursue the Avoidance Action and Make Distributions to Creditors.

6    Dismissal of the Debtors' bankruptcy case would be prejudicial to creditors because it

7  would negatively impact the Trustee's ability to pursue the Avoidance Action seeking to recover

8  the fraudulently transferred residence for the benefit of creditors and the estate, and make

9  distributions to creditors from the proceeds thereof.  Similar to this case, the court in In re Hopper,

10  404 B.R. 302, 307 (Bankr. N.D. Ill. 2009), was faced with a request for a dismissal by the debtor

11  prompted by, among other things, a desire to avoid pending litigation commenced by a trustee

12  against her.  As set forth by the court in Hopper, "legal prejudice is found to exist where assets

13  which would otherwise be available to creditors are lost because of the dismissal."  Id.  See also

14  Akbarian, 2013 WL at *5 ("[t]he issues that surround the Debtor's schedules and the transfers of

15  property lead the Court to the conclusion that the best interests of creditors would be better served

16  if the Debtor remained in Chapter 7 where the Trustee can administer the estate and provide for an

17  orderly distribution to creditors."); In re Schaforth, 2012 WL 1884895, *3 (Bankr. D.N.M. 2012)

18  ("[a]bsent court oversight of payment [by the debtor to creditors], creditors are prejudiced.  They

19  bear the risk of not being paid, a very unlikely risk in a chapter 7 case.  The method for insuring

20  payment of creditors out of any non-exempt portion of estate assets is through the trustee

21  system.") (citation omitted).

22    Similarly, in the Debtors' case, a dismissal would adversely impact the Trustee's ability to

23  pursue the Avoidance Action and make ratable distributions to creditors, and should be denied.

24        2.   An Alleged Ability of the Debtors to Repay Debts Does Not Constitute Adequate

25             Cause For Dismissal.

26    In support of the Motion to Dismiss, the Debtors make the general statement that they feel

27  they can best resolve creditors' claims outside of bankruptcy.  This unsupported assertion,

28  however, does not constitute cause to dismiss the Debtors' case.  Based on the Debtors' limited

1  assets and significant liabilities as reflected in the Schedules, such an ability appears to be, at best,

2  implausible.[2]  Even assuming, however, for argument's sake, that the Debtors had an ability to pay

3  creditors' claims, the courts have consistently shown an unwillingness to base a dismissal on a

4  debtor's ability to pay creditor's claims outside of bankruptcy.  See e.g., Turpen v. Eide (In re

5  Turpen) 244 B.R. 431, 435 (8th Cir, BAP 2000) (the fact that a debtor is willing and able to pay

6  debts outside of bankruptcy does not constitute adequate cause for dismissal under section 707(a)).

7  See also H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 380 (1977).; Isho v. Loveridge (In re Isho),

8  498 B.R. 91, *3 (10th Cir. BAP 2013) (unpublished opinion) (denial of debtor's motion to dismiss

9  appropriate because, among other things, a debtor's ability to pay debts outside of bankruptcy is

10 not sufficient cause, by itself, to dismiss, and finding in that case there was an unlikely ability to

11 pay such debts in a timely manner); Xiu Lan Guo Fan v. Youngman (In re Xiu Lan Guo Fan),

12 2013 WL 77641, *2 ("Dismissal of a petition may result in prejudice to creditors where the debtor

13 'has not presented any credible or viable plan for paying his creditors outside of bankruptcy'"); In

14 re Brooks, 2010 WL 148641, *1 (Bankr. C.D. Ill 2010) ("although the Debtor states an intent to

15 settle her debts outside of bankruptcy, there is no mechanism to enforce that intent.  The Court

16 finds that it would be prejudicial to the Debtor's unsecured creditors listed on Schedule F if the

17 Court were to dismiss this case prior to administration of the Debtor's assets by the Chapter 7

18 Trustee.").

19       Likewise, in this case, the Debtors' unsubstantiated statement that they wish to deal with

20 creditors outside of a bankruptcy, especially without a showing of any actual ability to pay

21 creditors, cuts strongly against dismissal of the bankruptcy case.

22       3.  Allegations Against Former Counsel Are Not Grounds for Dismissal.

23       The Debtors spend a great deal of time in the Motion to Dismiss asserting that the

24 bankruptcy was commenced without their approval and because of wrongdoing by their former

25 bankruptcy counsel and others.  The Reeds will not delve deeply into these allegations in this

26 ───────────────
[2] Not including the equity in the fraudulent transferred house, the show in their Schedules

27 $63,200 in assets and approximately $19.6 million in liabilities.  See Hopper, 404 B.R. at 309
   (denying dismissal because, among other things,"[t]he Debtor's Schedules do not show that she

28 has the ability to pay her debts outside of bankruptcy").  True and correct copies of the relevant
   portions of the Schedules are attached as Exhibit "3" to the Reed Declaration.

1    Opposition, except to point out that such allegations appear to be called into doubt and rebutted by

2    information and evidence, including that contained in the Debtors' bankruptcy filings themselves

3    and as submitted by the Debtors' former counsel in connection with the Motion to Dismiss. See

4    Declarations of William A. Kent and Gabriela Kent aka Gabriela Prokisova filed in opposition to

5    Motion to Dismiss [Docket Nos. 36 and 37].

6        In any event, as set forth by the court in Hopper, courts are not impressed with complaints

7    of attorney negligence, lack of representation, or errors in judgment by debtors when considering

8    motions for voluntary dismissal. Id. at 308 (citing In re Klein, 39 B.R. 530 (Bankr. E.D.N.Y.

9    1984) (denying motion to dismiss even though debtor asserted he was not fully advised of the

10   implications of commencing a bankruptcy case); In re Martin, 30 B.R. 24 (Bankr. E.D. N.C. 1983)

11   (denying motion to dismiss because the debtor was represented by counsel despite her assertion

12   that counsel failed to explain the effects of filing a bankruptcy petition); In re Kimball, 19 B.R.

13   300 (Bankr. D. Me. 1982) (denying motion to dismiss where debtors failed to read the petition

14   which contained false information because they believed their attorney "would do nothing which

15   wasn't right for them"); In re St. Laurent, 17 B.R. 768 (Bankr. D. Me. 1982) (denying motion to

16   dismiss because mistaken belief by debtor and her counsel that she could retain all assets as

17   exempt and receive discharge of all her dischargeable debts was not cause under § 707(a)).

18   Having voluntarily submitted themselves and their assets to the jurisdiction of the Bankruptcy

19   Court, the Debtors' regret over that decision does not constitute cause justifying dismissal of their

20   case. See Hopper, 404 B.R. at 309.

21       The Debtors' finger-pointing, regret and purported misunderstandings regarding the

22   chapter 7 filing – even if accurate (which accuracy appears to be hotly contested) – do not support

23   dismissal of the bankruptcy case.

24       4.   The Trustee and Creditors Oppose Dismissal of the Bankruptcy Case.

25       An important additional factor considered by the courts is whether the dismissal is

26   supported by the chapter 7 trustee and/or creditors of the estate. See e.g., Akbarian, 2013 WL at

27   *3, 5 ("[a]dditional factors that a court may consider include whether all the creditors have

28   consented . . .). In this case, both the Trustee and the Reeds oppose the Motion to Dismiss,

1 | weighing strongly against a dismissal – especially in light of the prejudice to the parties in so

2 | doing.

3 | <div align="center">**CONCLUSION**</div>

4 |     The Debtors' case should remain in bankruptcy under the Trustee's direction.  There has

5 | been no "cause" for dismissal established by the Debtors, and the prejudice to creditors from a

6 | dismissal support the continuation of this case under the auspices of the Bankruptcy Code.

7 |     The Reeds, therefore, urge this Court to deny the Debtors' Motion to Dismiss as

8 | prejudicial to creditors and otherwise not appropriate under Section 707(a).

9 | DATED: February 6, 2015

           LOBEL, NEUE & TILL, LLP

By: _____
    Mike D. Neue
Attorneys for Creditors,
Presley O. Reed and Patricia Stacey Reed

OPPOSITION TO DEBTORS' MOTION
TO DISMISS BANKRUPTCY CASE AND
JOINDER TO CHAPTER 7 TRUSTEE'S
OPPOSITION TO MOTION TO DISMISS

-7-

## **DECLARATION OF PRESLEY O. REED**

I, Presley O. Reed, declare and state as follows:

1. My wife, Patricia Stacey Reed, and I are creditors and parties-in-interest in the above-captioned chapter 7 bankruptcy case. Except as otherwise stated, I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would competently testify thereto. I make this declaration on my own behalf and I am also authorized to make this declaration on behalf of my wife.

2. We make this declaration in support of our Opposition to the Motion to Dismiss Chapter 7 Bankruptcy Case ("Motion to Dismiss"), filed by Ilangovan Kuppusamy and Ranjani Ilangovan Krishnan (the "Debtors"). In addition, we join in the Opposition to the Motion to Dismiss filed by Richard A. Marshack, the chapter 7 trustee appointed in the Debtors' cases (the "Trustee").

3. On November 4, 2014, my wife and I, along with other plaintiffs, commenced an action against the Debtors and their business entity, IRK International S.A. de C.V., in the United States District Court of the District of Colorado, entitled Presley O. Reed, Patricia Stacey Reed, KMP Mining, LLC, KMP Mexico, LLC, KMP International, LLC, Trasteel Belgium Societe Anonyme, Belgiron SA, and Trasteel International S.A. v. Ilangovan Kuppusamy, Ranjani Ilangovan Krishnan and IRK International S.A. de C.V., Case No. 1:14-cv-02989 (the "Colorado Action"). By the Colorado Action, my wife and I, and the other plaintiffs therein, assert over $17.5 million in claims against the Debtors based on conversion, fraudulent misrepresentation/omission, contribution and breach of contract related to, among other things, the Debtors' misconduct in raising funds from us and others related to a failed Mexican iron ore enterprise. A true and correct copy of the complaint filed in the Colorado Action that form the basis for our claims against the Debtors is attached as Exhibit "1" hereto.

4. In the Debtors' Schedules of Assets and Liabilities (Schedule F – Creditors Holding Unsecured Nonpriority Claims) (the "Schedules"), the Debtors include our claims (listed in the amount of $9,145,859), and the claims of co-plaintiff Trasteel Belgium Societe Anonyme

OPPOSITION TO DEBTORS' MOTION
TO DISMISS BANKRUPTCY CASE AND
JOINDER TO CHAPTER 7 TRUSTEE'S
OPPOSITION TO MOTION TO DISMISS

-8-

(listed in the amount of $5,677,251.59).[3]  These claims are not marked as contingent, unliquidated or disputed.  True and correct copies of the relevant portions of the Schedules are attached as Exhibit "2" hereto.

5.       We are informed and believe that, shortly after the commencement of the Colorado Action, the Debtors transferred what appears, at this point, to be their only material disclosed asset – their residence – to their son, Harikrishnan Kuppusamy Krishnan, for no consideration.  Based on information provided by the Trustee, we are further informed and believe that there exists significant equity in the residence that could be utilized to pay creditors' claims, and that the continuation of the Debtors' cases in bankruptcy would provide greater recovery for creditors than outside of bankruptcy.

6.       We are informed and believe that, on January 27, 2015, the Trustee filed a complaint to avoid and recover the Debtors' transfer of the residence to their son (Adversary Case No. 8:15-ap-01027-CB) [Docket No. 18] (the "Avoidance Action").

7.       Our counsel, Mike D. Neue of Lobel, Neue & Till, LLP, attended the Debtors' section 341(a) meeting of creditors scheduled for February 3, 2015.  We were advised by our counsel that the Debtors failed to appear at the meeting.

8.       We oppose dismissal of the Debtors' bankruptcy case.  We believe that dismissal of the Debtors' bankruptcy case would be prejudicial to creditors because it would negatively impact the Trustee's ability to pursue the Avoidance Action seeking to recover the fraudulently transferred residence for the benefit of creditors and the estate, and make distributions on account of creditors' claims.

9.       In addition, based on the Debtors' limited assets and significant liabilities as reflected in the Schedules, we do not believe that the Debtors have the ability to pay claims outside of bankruptcy.  Not including the equity in the fraudulent transferred house, the Debtors show in their Schedules $63,200 in assets and approximately $19.6 million in liabilities.  True and correct copies of the relevant portions of the Schedules are attached as Exhibit "3" hereto.

---

[3] These amounts reflect some, but not all, of the damage claims asserted against the Debtors by the plaintiffs in the Colorado Action.  We reserve all rights to assert any and all appropriate claims and arguments in the Debtors' case.

1      10.    We urge the Court to maintain this chapter 7 case under the direction of the Trustee

2   and deny the Debtors' request for dismissal of the case.

3          I declare under penalty of perjury under the laws of the United States of America that the

4   foregoing is true and correct.

5          Executed this 6th day of February 2015, at _Boulder_, ~~California.~~ Co-

6

7

8                                    _____
                                     PRESLEY O. REED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

_____

PRESLEY O. REED,
PATRICIA STACEY REED,
KMP MINING, LLC,
KMP MEXICO, LLC,
KMP INTERNATIONAL, LLC,
TRASTEEL BELGIUM SOCIÉTÉ ANONYME,
BELGIRON SA, and
TRASTEEL INTERNATIONAL S.A.,

Plaintiffs,

v.

ILANGOVAN AMMAL KUPPUSAMY,
RANJANI ILANGOVAN KRISHMAN, AND
IRK INTERNATIONAL S.A. de C.V.

Defendants.

_____

## COMPLAINT

_____

1.       Plaintiffs, Presley O. Reed, Patricia Stacey Reed, KMP Mining, LLC,

KMP Mexico, LLC, Trasteel Belgium Société Anonyme, Belgiron SA and Trasteel International

S.A. (the "Plaintiffs"), by and through their undersigned counsel, Peter B. Nagel, P.C., alleges as

their Complaint against the Defendants as follows:

## PARTIES

2.       Presley O. Reed ("Dr. Reed") and Patricia Stacey Reed ("Mrs. Reed") are

residents of the State of Colorado and have as their principal place of business 375 Bellevue Drive, Boulder, Colorado 80302.

3.     KMP Mexico, LLC is a Delaware limited liability company whose sole member and manager is Mrs. Reed.

4.     KMP Mining, LLC is a Delaware limited liability company whose sole member is Dr. Reed.

5.     KMP International, LLC is a Delaware limited liability company whose sole members are Dr. and Mrs. Reed.

6.     Trasteel Belgium Société Anonyme is a Belgium Société Anonyme  en liquidation having its principal place of business at Boulevard Du Souverain 90, 1170 Bruxelles, Belgium.

7.     Belgiron SA is a Belgium company Société Anonyme en liquidation having its principal place of business at Avenue de Petit-Rouelx 1, 7181 Arquennes, Belgium

8.     Trasteel International S.A. is a Swiss Société Anonyme  having its principal place of business at via Pelli 12, 6900 Lugano, Switzerland.

9.     IRK International S.A. de C.V. is a Mexican Sociedad Anónima de Capital Variable that no longer has a principal place of business.

10.     On information and belief, Ilangovan Ammal Kuppusamy ("Dr. Kuppusamy") and Ranjani Ilangovan Krishman ("Mrs. Kuppusamy") are husband and wife, citizens of India, and maintain a residence in the United States at 5371 Strasbourg Avenue, Irvine, California 92604.

## JURISDICTION AND VENUE

11.     This court has jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

13.     Following the events, described below, that form the basis of the Plaintiffs' complaint against the Defendants, the Defendants purposely terminated all communications with the Plaintiffs, relocated their personal residence from Mexico to the United States without informing the Plaintiffs of that relocation, and deliberately concealed their whereabouts from the Plaintiffs. Only recently were the Plaintiffs able, through the exercise of reasonable diligence and the services of a private investigator, to determine the location of the Defendants' place of residence.

## FACTUAL BACKGROUND

14.     On June 8, 2004, Dr. and Mrs. Kuppusamy formed a Mexican corporation known as "IRK International, SA de CV" ("IRK").

*Investments in IRK Made by Dr. and Mrs. Reed*

15.     In 2008, a business associate of Dr. Reed's introduced Dr. Reed to Dr. Kuppusamy, who represented himself to Dr. Reed as the chairman and chief executive officer of IRK.

16.     On April 28, 2009 and at least one other occasion, Dr. Kuppusamy travelled to Boulder, Colorado, where he met in person with Dr. Reed to discuss matters relating

to Dr. Reed's investment in IRK.

17.     Between October of 2008 and November of 2009, Dr. and Mrs. Reed
transferred the following amounts to IRK, which amounts were intended to be either loans to or
contributions to the capital of IRK:

| | |
|---|---|
| October 2, 2008 | $500,000 |
| October 14, 2008 | $200,000 |
| October 21, 2008 | $200,000 |
| October 31, 2008 | $150,000 |
| November 20, 2008 | $250,000 |
| December 29, 2008 | $125,000 |
| January 7, 2009 | $450,000 |
| January 15, 2009 | $1,000,000 |
| February 2, 2009 | $1,000,000 |
| March 9, 2009 | $250,000 |
| April 8, 2009 | $250,000 |
| April 9, 2009 | $45 |
| April 15, 2009 | $400,000 |
| May 5, 2009 | $500,000 |
| May 15, 2009 | $500,000 |
| May 21, 2009 | $20,814 |
| June 18, 2009 | $200,000 |
| June 30, 2009 | $500,000 |
| July 15, 2009 | $500,000 |
| July 20, 2009 | $200,000 |
| July 22, 2009 | $200,000 |
| July 27, 2009 | $350,000 |
| July 30, 2009 | $400,000 |
| November 25, 2009 | $1,000,000 |
| TOTAL | $9,145,859 |

The transfers dating from October 2, 2008 through March 9, 2009 were made by wire transfer to

an account in the name of IRK at HSBC Mexico, S.A. All subsequent transfers were made by

wire transfer to an account in the name of IRK at JP Morgan Chase Bank, N.A.

18.     In addition, Dr. and Mrs. Reed had paid $1.250 million in order to acquire the shares in IRK formerly owned by Javid Rahman.

19.     By March of 2009, the documentation regarding Dr. and Mrs. Kuppusamy's and Dr. and Mrs. Reed's investments in IRK included the following:

- Letter of intent February 25, 2009, regarding Asset Transfer and Subscription and Shareholders Agreement which confirms the understanding between KMP Mining, LLC, KMP Mexico, LLC, IRK International, S.A. de C.V. ("IRK"), Mr. Ilangovan Kuppusamy Ammal and Mrs. Ranjani Ilangovan Krishnan.

- Purchase Letter of Intent, dated February 18, 2009, which confirms the mutual understanding between Dr. Presley Reed and Stacey Reed, Dr. Ilangovan Kuppusamy Ammal and Mrs. Ranjani Ilangovan Krishnan and IRK.

- Loan Agreement dated February 25, 2009, entered into by and between IRK as Borrower and KMP International, LLC as Lender.

- Security Agreement dated February 25, 2009, entered into by and between IRK as Borrower and KMP International, LLC as Lender.

- Guarantee Agreement dated February 25, 2009, entered into by between IRK as Borrower and KMP International, LLC as Lender.

- Guarantee Agreement, dated February 25, 2009, entered into by and among

- 5 -

Mr. Ilangovan Kuppusamy Ammal and Mrs. Ranjani Ilangovan Krishnan as Guarantors, and KMP International, LLC as Lender.

- Public Deed no. 8,981 dated August 14, 2008, which notarizes the General Extraordinary Stockholders' Meeting of IRK held June 25, 2008.

- Stock structure certificate of IRK dated February 25, 2009, certifying the capital structure of IRK before the preceding transactions.

- Stock Pledge Agreement, dated February 25, 2009, entered into by and among Mr. Ilangovan Kuppusamy Ammal and Mrs. Ranjani Ilangovan Krishnan as Pledgors, KMP International, LLC as Pledgee, and IRK.

- Stock certificate no. 1 issued in favor of Ranjani Ilangovan Krishnan, which represents 245 stocks of the fixed capital of IRK.

- Stock certificate no, 2 issued in favor of Ilangovan Kuppusamy Ammal, which represents 245 stocks of the fixed capital of IRK.

- Stock certificate no. 3 issued in favor of Ranjani Ilangovan Krishnan, which represents 40,000 socks of the variable capital of IRK.

- Stock certificate issued no. 4 issued in favor of Ilangovan Kuppusamy Ammal, which represents 60,000 stock of the variable capital IRK.

- Stock certificate no. 5 issued in favor of Javid Rahman, which represents 35,000 stocks of the variable capital of IRK.

- Stock certificate no. 6 issued in favor of Ilangovan Kuppusamy Ammal,

which represents 33,000 stocks of the variable capital of IRK.

- Stock certificate no. 8 issued in favor of Ranjani Ilangovan Krishnan, which represents 10,000 stocks of the variable capital of IRK.

- Stock certificate no. 11 issued in favor of Ilangovan Kuppusamy Ammal, which represents 68,000 stocks of the variable capital of IRK.

- Certificate of IRK, dated February 25, 2009, certifying the perfection of the Stock Pledge.

- Floating Borrower Pledge, dated February 25, 2009 entered into by and between IRK as Pledgor and KMP International, LC, as Pledgee.

- Promissory note, dated February 25, 2009, executed by Ilangovan Kuppusamy Ammal and Ranjani Ilangovan Krishnan in favor of KMP international LLC for the amount of $1,500,000.

- Promissory note, dated January 15, 2009, executed by Ilangovan Kuppusamy Ammal and Ranjani Ilangovan Krishnan in favor of Presley Reed for the amount of $2,948,000.

- Promissory note dated February 25, 2009, executed by IRK in favor of KMP International LLC for the amount of $3,000,000.

- Promissory note dated February 25, 2009, executed by IRK in favor of KMP International LLC for the amount of $200,00.

20.     As of May 25, 2010, the shareholders of IRK were as follows:

- 7 -

| | | |
|---|---|---|
| IRK MINERIA, S.A. DE C.V. Representado por: Ilangovan Kupussamy / Ranjani Ilangovan Krishnan | 52.00% | $5,226,000 |
| KMP Mining, LLC | 24.00% | $2,412,000 |
| KMP México, LLC | 24.00% | $2,412,000 |
| **TOTAL:** | 100.00% | $10,050,000 |

*Investments Made by Trasteel Entities in IRK*

21.     On March 22, 2010, Trasteel Investments Holding SA Luxembourg ("Trasteel Investments") and IRK entered into a Letter of Intent, pursuant to which Trasteel Investments expressed an interest in acquiring 25 percent of the shares of IRK.

22.     Effective as of June 9, 2010, IRK, IRK Mineria, KMP Mining, LLC, KMP Mexico, LLC, and Trasteel Investments entered into a Stock Purchase Agreement (the "Stock Purchase Agreement"). Trasteel Investments SA later assigned its rights and obligations under the Stock Purchase Agreement to Trasteel Belgium SA and Belgiron SA. On August 5, 2010 the First Amendment and Restatement of the Stock Purchase Agreement was entered into between IRK, IRK Mineria, KMP Mining, LLC, KMP Mexico, LLC as sellers and Trasteel Belgium SA and Belgiron SA as purchasers of the stock. According to the First Amendment and Restatement of the Stock Purchase Agreement, Trasteel Belgium and Belgiron would purchase stock of IRK for a total price of US $17,500,000 as follows:

1)     IRK issued 45.448 series B shares to Trasteel Belgium SA in exchange for payment of US $3,500,000 to IRK

2)     363,632 series B shares transferred by the existing shareholders :

   • 96,626 shares from IRK Mineria to Trasteel Belgium

- 48,313 shares from KMP Mining to Trasteel Belgium

- 573 shares from KMP Mexico to Trasteel Belgium and

- 218,120 shares to Trasteel Belgium

3)   the balance of US $14,000,000 was to be paid by Trasteel to the Sellers with the

following deadlines:

(a)   US $2,500,000 were to be paid pro rata to the Sellers on the closing date

(b)   US $2,000,000 were to be paid pro rata to the Sellers on or before
September 30, 2010

(c)   US $2,500,000 were to be paid pro rata to the Sellers on or before
December 31, 2010 on the date that the Company had delivered 80 percent
of the committed tonnage according to the offtake agreement entered into
by the Company and Trasteel International

(d)   US $3,000,000 were to be paid pro rata to the Sellers on or before March
31, 2011 on the date that the Company had delivered 100% of the
committed tonnage  according to the offtake agreement entered into by the
Company and Trasteel International

-   USD 4.000.000 were to be kept by Trasteel to secure prompt and complete
payment of any amount owed by Seller, including but not limited to
indemnifications under the Agreement

23.   Trasteel Investments Holding paid on behalf of Trasteel Belgium a total
of US $6,000,000 on the closing date.

24.   Attached to the First Amendment and Restatement of the Stock Purchase

Agreement as exhibits were financial statements of IRK for its fiscal years ending on December

31, 2005 through 2009. The Stock Purchase Agreement also set forth various representations

concerning mines, mineral rights, and other related assets in which IRK was said to hold an

interest.

25.     The Stock Purchase Agreement required that Trasteel Belgium and

Belgiron had the right to appoint the Chief Operating Officer, the Chief Financial Officer and the

Fiscal Controller. Immediately after the closing of the transactions described in the First

Amendment and Restatement of the Stock Purchase Agreement, Dr. Kuppusamy refused to

permit Trasteel Investments' designee for that position to assume any responsibility.

26.     On approximately August 1, 2010, Trasteel Investments and Dr. and Mrs.

Reed learned that all IRK assets had been frozen by a Mexican judge due to a legal pending case.

In response to an inquiry regarding this situation, Dr. Kuppusamy informed Trasteel that

"everything is in order," that this was a personal issue and he was confident that he would be

able to solve it. That representation was false.

27.     Within a month after the closing of the Stock Purchase Agreement, it

became apparent to Trasteel and Dr. and Mrs. Reed that the financial circumstances of IRK were

vastly different from those disclosed in the Stock Purchase Agreement and the First Amendment

and Restatement of the Stock Purchase Agreement and that Dr. Kuppusamy had no intention of

sharing any accurate information concerning that company's true financial circumstances.

28.     During this period, on information and belief, Dr. Kuppusamy purposely

destroyed or removed all corporate records of IRK and its financial affairs. At no relevant time

did Dr. Kuppusamy permit any representative of Trasteel or of the Reeds to gain access to IRK's

books and financial records.

29.     On approximately September 27, 2010, Trasteel and Dr. and Mrs. Reed informed Dr. Kuppusamy that they intended to enter into a Master Exiting Agreement pursuant to which Dr. Kuppusamy would be required to repurchase all shares issued or sold to Trasteel Belgium and Belgiron under the First Amendment and Restatement of the Stock Purchase Agreement. Over the course of the following month, Dr. Kuppusamy represented that he would be agreeable to entering into such a Master Exiting Agreement. However, he had no intention of doing so.

30.     In late December of 2010 and early January of 2011, Trasteel and Dr. and Mrs. Reed arranged for their representatives to visit the offices of IRK and to deliver to Dr. Kuppusamy resolutions removing him from any position of authority with IRK. Initially, the receptionist in those offices confirmed that those were in fact the offices of IRK, but subsequently denied that fact, even though other visitors to the same building who stated that they were visiting the IRK offices were granted access. Those same representatives then visited another address that Dr. Kuppusamy had represented to be offices of IRK, but those offices were largely empty, contained furniture but no computers, files, books, and the like, and were staffed only by one person.

31.     That same day, those representatives visited the offices of HSBC Bank and delivered to a representative of that bank board resolutions requesting that all accounts in the name of IRK be frozen. That bank informed those representatives that the total balance of all such accounts was less than $5,000.

32.     On information and belief, IRK currently owns, and has not owned since

2010, any material assets and is and has been since that time, insolvent.

## FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
### *(Conversion)*

33.     Plaintiffs incorporate all previous allegations as if more fully set forth herein.

34.     The direction and control of IRK was at all relevant times under the sole management of Dr. Kuppusamy, such that he was in a position to determine and control whether to devote the assets of IRK to its proper corporate purposes or whether to devote those assets to his personal use.

35.     On July 27, 2010, Dr. Kuppusamy requested that the payment from Trasteel be deposited into "my personal account of Bank of America since I need to workout my taxation of IRK Mineria." On information and belief, to the extent that such payments were deposited into Dr. Kuppusamy's personal account, he never transferred them to an account belonging to or controlled by IRK

36.     To the extent that Trasteel  and Dr. and Mrs. Reed have been able to obtain or recreate statements of IRK's banking activity, those statements disclose a pattern of withdrawals made for no identifiable purpose and payable to no identifiable payee made from IRK's accounts in amounts generally precisely equal to all amounts that Trasteel Investments, Trasteel International and Dr. and Mrs. Reed transferred to IRK. Based on information and belief, there is no legitimate business rationale for any such withdrawals, and all such withdrawals were made solely under the authorization of Dr. Kuppusamy and were diverted to his personal use.

37.     Dr. and Mrs. Kuppusamy's conversion of the corporate assets of IRK has caused the Plaintiffs' investments in IRK to become worthless and has caused the Plaintiffs to incur damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
### *(Fraudulent Misrepresentation/Omission)*

38.     Plaintiffs incorporate all previous allegations as if more fully set forth herein.

39.     On November 13, 2009, Dr. Kuppusamy transmitted by email to Dr. and Mrs. Reed an Excel spreadsheet purporting to identify the status of IRK's ownership or control over Mexican iron and manganese ore mining properties.

40.     According to its web site (now discontinued, but publicly accessible throughout 2009), IRK stated that it "is one of the leading mine concession owners of Mexico" and that it "owns potential reserve of 60 million tons of iron ore, 1.2 million tons of Manganese ore, 2 million tons of Zinc ore, 200 million tons of Silica quartz, and 14 million tons of Copper ore in different locations in Mexico though contracts and concession rights for Mining in Mexico." On information and belief, all such statements were false, Dr. Kuppusamy knew them to be false, and Dr. Kuppusamy intended nonetheless that Dr. and Mrs. Reed would rely on such statements for purposes of making their investments in IRK.

41.     Dr. Kuppusamy was aware at the time that virtually all the material representations and warranties made by IRK in the Stock Purchase Agreement were false when made and knew that Trasteel Investments and Dr. and Mrs. Reed had relied on those representations when they invested in the capital stock of IRK.

- 13 -

42.     Dr. and Mrs. Kuppusamy's fraudulent misrepresentations have caused the Plaintiffs to incur damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### AND SUPPORTING FACTUAL ALLEGATIONS
*(Contribution)*

43.     In November of 2009, IRK entered into a contract with Fremery Holdings Limited ("Fremery"), a firm carrying on the business of trading in commodities and having its principal place of business at Room 809, North Tower, Concordia Plaza, 1 Science Museum Road, TST, Hong Kong (the "Fremery Contract"). The terms of the Fremery Contract required IRK to deliver 44,000 metric tons of ore having an iron content of at least 63 percent, with a minimum of 62.5 percent, to Fremery.

44.     On November 17, 2009, Dr. Reed executed and delivered to Fremery a Performance Guaranty in which he personally guaranteed all of IRK's obligations under the Fremery contract.

45.     On December 16, 2009, IRK caused a cargo ship to be loaded with iron ore and to set sail for Beilun Port, China. At the time such vessel set sail, Dr. Kuppusamy delivered to Fremery a document purporting to have been executed by SGS Mexico, a Mexican minerals testing firm, certifying that the ore contained in such vessel had an iron ore content of 62.32 percent. On information and belief, the document purporting to have been executed by SGS Mexico was not authentic and had been forged by Dr. Kuppusamy.

46.     Upon its receipt of such document, Fremery caused to be delivered to IRK the sum of $1,171,085.15. On information and belief, Dr. Kuppusamy diverted the entire amount of such payment into his personal account.

- 14 -

47.     Upon the vessel's arrival in Beilun Port, China, and subsequently upon the redelivery of its cargo to a third party in Changzhou, China, Fremery and Dr. Kuppusamy caused that cargo to be tested by two separate inspectors, who certified that the iron ore content of that shipment was 49.28 percent and 49.11 percent, respectively.

48.     In March of 2014, Fremery filed a Statement of Claim with the Hong Kong International Arbitration Centre alleging that Dr. Reed is liable to Fremery under the Performance Guarantee in an amount equal to $2,148,714.84.

49.     To the extent that Dr. Reed is found liable to Fremery for any amount under the Performance Guarantee, such liability is directly attributable to the false representations, falsified documentation, and other fraudulent conduct committed by Dr. Kuppusamy.

50.     Dr. and Mrs. Kuppusamy are liable to Dr. Reed for contribution in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### AND SUPPORTING FACTUAL ALLEGATIONS
*(Breach of Contract, Conversion, and Fraudulent Misrepresentation)*

51.     On March 22, 2010, IRK and Trasteel International SA entered into a Sale and Purchase Contract of Iron Ore ("Trasteel Purchase Agreement"), which provided in part that IRK would sell eight cargo loads of iron ore to Trasteel at a price varying between $63 and $68 per ton. Of the eight shipments required under the Trasteel Purchase Agreement, IRK completed only two. In each case, chemical analysis of the ore delivered to the destination port revealed that the iron content was substantially less than that reflected in certificates that IRK caused to be delivered to Trasteel and that purported to establish the iron ore content at the port

of origin. On information and belief, Dr. Kuppusamy falsified the certificates of quality of the ore at the port of origin for the purpose of inducing Trasteel to make payments under the Trasteel Purchase Agreement. Trasteel faced quality issues, demurrage costs and carried out pre-payments for material that was never delivered for a total of USD 5.677.251,59.

52.     On information and belief, Dr. Kuppusamy systematically and secretly withdrew virtually all amounts that Trasteel had paid to IRK pursuant to the Trasteel Purchase Agreement from IRK bank accounts and deposited those amounts in accounts that Dr. Kuppusamy alone controlled. The Plaintiffs are unable to trace such funds beyond their withdrawal from IRK accounts because all banking records relating to the accounts into which such funds were transferred were entirely under the possession and control of Dr. Kuppusamy.

53.     Dr. and Mrs. Kuppusamy's fraudulent misrepresentations and conduct induced Trasteel to enter into the Trasteel Purchase Agreement, as a result of which Dr. Kuppusamy converted to his personal use all amounts that Trasteel paid to IRK under that contract, and therefore Dr. Kuppusamy caused Trasteel to incur damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

54.     Plaintiffs therefore requests the following relief:

A.      That this Court enter judgment against Ilangovan Kuppusamy Ammal and Ranjani Ilangovan Krishman, jointly and severally, and in favor of the Plaintiffs in such amounts as the Plaintiffs may establish at trial to be attributable to the Defendants' breach of contract, conversion, fraudulent misrepresentation, and contribution obligations, plus attorneys' fees, costs and interest;

   B.  That this Court order such other and further relief as this Court may deem

proper.

Dated this 3rd day of November, 2014.


       /s/ Peter B. Nagel      
       Peter B. Nagel
       Peter B. Nagel, P.C.
       999 Eighteenth Street, Suite 1745
       Denver, Colorado 80202
       Telephone: 303-296-4840
       Facsimile: 303-296-6007
       Email: pbnagel@rmi.net

       Attorney for Plaintiffs:
       Presley O. Reed,
       Patricia Stacey Reed,
       KMP Mining, LLC,
       KMP Mexico, LLC,
       KMP International, LLC,
       Trasteel Belgium Société Anonyme,
       Belgiron S.A., and
       Trasteel International S.A.

EXHIBIT "2"

In re  Ilangovan Kuppusamy  Ranjani I. Krishnan          ,          Case No. _____
              **Debtor**                                                                       **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data..

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 14-CV-02989 <br><br> Presley O. Reed <br> 375 Bellevue Drive <br> Boulder, CO 80302 | J | | 11/04/2014 <br> Summons, Lawsuit | | | | $9,145,859 |
| ACCOUNT NO. 14-CV-02989 <br><br> Patricia Stacey Reed <br> 375 Bellevue Drive <br> Boulder, CO 80302 | J | | 11/04/2014 <br> Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. 14-CV-02989 <br><br> KMP Mining, LLC <br> 375 Bellevue Drive <br> Boulder, CO 80302 | J | | 11/04/2014 <br> Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. 14-CV-02989 <br><br> KMP Mexico, LLC <br> 375 Bellevue Drive <br> Boulder, CO 80302 | J | | 11/04/2014 <br> Summons, Lawsuit | | | | N/A |

                                                                Subtotal► | $ | 9,145,859

_**4**_ continuation sheets attached

                                                            Total► | $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.)

In re ___Ilangovan Kuppusamy  Ranjani I. Krishnan___ ,        Case No. _____
              **Debtor**                                                                 **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 14-CV-02989<br><br>KMP International, LLC<br>375 Bellevue Drive<br>Boulder, CO 80302 | J | | 11/04/2014<br>Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. 14-CV-02989<br><br>Trasteel Belgium Societe An.<br>Blvd du Souverain 90<br>1170 Bruxelles, Belgium | J | | 11/04/2014<br>Summons, Lawsuit | | | | $5,677,251.59 |
| ACCOUNT NO. 14-CV-02989<br><br>Belgiron SA<br>Avenue de Petit Rouelx 1<br>7181 Arquennes Belgium | J | | 11/04/2014<br>Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. 14-CV-02989<br><br>Trasteel International SA<br>Via Pelli 12<br>6900 Lugano, Switzerland | J | | 11/04/2014<br>Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. HKIAC 13109<br><br>Hong Kong International<br>38/F Two Exchange Square<br>8ConnaughtPlace HongKong | J | | 10/08/2014<br>Arbitration of Financial<br>Claim | | | | $2,825,966.43 |

Sheet no. __1__ of __3__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤ | $ 7,824,966.43

Total➤ | $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

In re   Ilangovan Kuppusamy  Ranjani I. Krishnan   ,          Case No. _____
              **Debtor**                                              (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. HKIAC 13109<br><br>Froemery Holdings Limited<br>Room 809 North Tower<br>Concordia Plaza HongKong | J | | 10/08/2014<br>Arbitration of Financial Claim | | | | N/A |
| ACCOUNT NO. 0208<br><br>USCB America<br>PO BOX 74929<br>Los Angeles, CA 90004 | J | | Credit Card<br>Rovolving Account | | | | $467.17 |
| ACCOUNT NO. 2058<br><br>Bank of America<br>PO BOX 15019<br>Wilmington, DE 19886 | J | | Credit Card<br>Revolving Account | | | | $10,844.64 |
| ACCOUNT NO. 8776<br><br>Bank of America<br>PO BOX 15019<br>Wilmington, DE 19886 | J | | Credit Card<br>Rovolving Account | | | | $7,018.46 |
| ACCOUNT NO. 8619<br><br>Bank of America<br>PO BOX 15019<br>Wilmington, DE 19886 | J | | Credit Card<br>Revolving Account | | | | $1,727.26 |

Sheet no. __2__ of __2__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤   $ 20,057.53

Total➤   $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

In re  Ilangovan Kuppusamy  Ranjani I. Krishnan      ,        Case No. _____
              **Debtor**                                                              **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 121/2010<br><br>Gurbax Singh Bhasin<br>16518 E Valley Blvd<br>La Puente CA 91744 | J | | Civil Summons, Lawsuit | | | | $2,400,000 |
| ACCOUNT NO. 121/2010<br><br>Juzgado Civil 73<br>Secretaria "A"<br>Mexico City, Mexico | J | | Civil Summons, Lawsuit | | | | N/A |
| ACCOUNT NO. 774/2012<br><br>Cruz Montes, Jorge Luis<br>223 Campos Eliseos, PH<br>Col.Polanco, Mexico DF | J | | Civil Summons, Lawsuit | | | | $200,000 |
| ACCOUNT NO. 774/2012<br><br>Juzgado Civil 52<br>Mexico City, Mexico | J | | Civil Summons, Lawsuit | | | | N/A |
| ACCOUNT NO.<br><br> | | | | | | | |

Sheet no. __3__ of __3__ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal➤ | $ 2,600,000

Total➤ | $ 19,591,882.96
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

EXHIBIT "3"

B6A (Official Form 6A) (12/07)

In re  Ilangovan Kuppusamy, Ranjani I. Krishnan  ,          Case No. _____
              **Debtor**                                                    **(If known)**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate.  Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit.  If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."  If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim.  See Schedule D.  If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| None | None | | None | None |

Total▶  | **0**

(Report also on Summary of Schedules.)

In re  Ilangovan Kuppusamy, Ranjani I. Krishnan    ,        Case No. _____
           **Debtor**                                                              **(If known)**

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | | Cash on hand located at debtor's residence | J | $700 |
| 2.  Checking, savings or other finan-cial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and home-stead associations, or credit unions, brokerage houses, or cooperatives. | | Checking account with Bank of America and Wells Fargo located in city of Irvine | J | $1,000 and  $800 |
| 3.  Security deposits with public util-ities, telephone companies, land-lords, and others. | x | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | TV/Audio located at debtor's residence | J | $1,000 |
| 5.  Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Books, Art objects located at debtor's residence | J | $1,400 |
| 6.  Wearing apparel. | | Clothing, shoes located at debtor's residence | J | $600 |
| 7.  Furs and jewelry. | | Jewelry located at debtor's residence | J | $1,200 |
| 8.  Firearms and sports, photo-graphic, and other hobby equipment. | x | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | x | | | |
| 10. Annuities.  Itemize and name each issuer. | x | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s).  11 U.S.C. § 521(c).) | x | | | |

In re  Ilangovan Kuppusamy, Ranjani I. Krishnan     ,                    Case No. _____
              **Debtor**                                                         **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | x | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | x | | | |
| 14. Interests in partnerships or joint ventures.  Itemize. | x | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | x | | | |
| 16. Accounts receivable. | x | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | x | | | |
| 18. Other liquidated debts owed to debtor including tax refunds.  Give particulars. | x | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | x | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | x | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | x | | | |

B 6B (Official Form 6B) (12/07) -- Cont.

In re  Ilangovan Kuppusamy, Ranjani I. Krishnan      ,        Case No. _____

_____Debtor_____                                              (If known)

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | x | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | x | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | x | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | Acura MDX 2014 and Acura ILX 2013 located at debtor's residence | J | $36,000 and $19,000 |
| 26. Boats, motors, and accessories. | x | | | |
| 27. Aircraft and accessories. | x | | | |
| 28. Office equipment, furnishings, and supplies. | | MAC Computer located at debtor's residence | J | $1,500 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | x | | | |
| 30. Inventory. | x | | | |
| 31. Animals. | x | | | |
| 32. Crops - growing or harvested. Give particulars. | x | | | |
| 33. Farming equipment and implements. | x | | | |
| 34. Farm supplies, chemicals, and feed. | x | | | |
| 35. Other personal property of any kind not already listed.  Itemize. | x | | | |

_____2_____ continuation sheets attached      Total▶    $            63,200

(Include amounts from any continuation
sheets attached.  Report total also on
Summary of Schedules.)

| In re: **Llanovan Kuppusamy**<br>**Ranjani Llangovan Krishnan**<br><br>Debtor(s). | CHAPTER: **7**<br>CASE NUMBER: **8:14-bk-17399 CB** |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.   My business address is:

**840 Newport Center Drive**
**Suite 750**
**Newport Beach, CA 92660**

A true and correct copy of the foregoing document entitled **OPPOSITION OF PRESLEY O. REED AND PATRICIA STACEY REED TO DEBTORS' MOTION TO DISMISS BANKRUPTCY CASE; AND JOINDER TO CHAPTER 7 TRUSTEE'S OPPOSITION TO DEBTORS' MOTION TO DISMISS BANKRUPTCY CASE; DECLARATION FO PRESLEY O. REED IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 6, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.   **SERVED BY UNITED STATES MAIL**:
On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.   **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 6, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.   Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Overnight Mail**
**The Honorable Catherine E. Bauer**
**United States Bankruptcy Court**
**Central District of California**
**Ronald Reagan Federal Building and Courthouse**
**411 West Fourth Street, Suite 5165 / Courtroom 5D**
**Santa Ana, CA 92701-4593**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/6/2015 | **Nancy Lockwood** | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.   It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: | CHAPTER **7** |
|---|---|
| **Llanovan Kuppusamy**<br>**Ranjani Llangovan Krishnan**<br><div align="right">Debtor(s).</div> | CASE NUMBER **8:14-bk-17399 CB** |

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- D Edward Hays ehays@marshackhays.com, ecfmarshackhays@gmail.com
- William A Kent WKENT1@COX.NET
- Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
- Mike D Neue mneue@lntlaw.com, jokeefe@lntlaw.com;nlockwood@lntlaw.com
- Ashley M Teesdale ateesdale@marshackhays.com, ecfmarshackhays@gmail.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.   It has been approved for use by the United States Bankruptcy Court for the Central District of California.